UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
ELINA TURYANTS,

                  Plaintiff,

      - against -

CITY OF NEW YORK, NEW YORK CITY
POLICE DEPARTMENT, PO NICOLE
ATKINSON, PO KURT ANDERSON of the
112th Precinct, POLICE OFFICERS JOHN
DOES 1-4 persons employed by the New York
City Police Department,

                  Defendants.
----------------------------------------------------------x

**MEMORANDUM & ORDER**
18-CV-841 (PKC) (PK)

PAMELA K. CHEN, United States District Judge:

      Plaintiff Elina Turyants brings this action pursuant to 42 U.S.C. § 1983 against Defendants City of New York, New York City Police Department ("NYPD") Officers Nicole Atkinson and Kurt Anderson, and other unidentified NYPD officers for false arrest, failure to intervene, malicious prosecution, and various state law claims.[1] Before the Court is Defendants' motion for summary judgment. For the reasons stated below, Defendants' motion is granted in its entirety.

---

[1] Plaintiff also names the NYPD as a defendant. (*See* Complaint, Dkt. 1, ¶ 6.) However, since the NYPD is a non-suable entity, *see Wims v. N.Y.C. Police Dep't*, No. 10-CV-6128 (PKC), 2011 WL 2946369, at *6 (S.D.N.Y. July 20, 2011) (citing *Ximines v. George Wingate High Sch.*, 516 F.3d 156, 160 (2d Cir. 2008)) (per curiam) ("Section 396 of the Charter has been construed to mean that New York City departments, as distinct from the City itself, lack the capacity to be sued."), the Court dismisses it as a defendant in this action.

1

## BACKGROUND

A.     **Relevant Facts**[2]

On Sunday, January 29, 2017, Plaintiff was a passenger in a car driven by non-party Michael Yusupov.[3] (Defendants' 56.1 Statement ("Defs.' 56.1"), Dkt. 34, ¶ 1.) While Yusupov was attempting to park his car, he got into an accident with an Uber driver, Shahid Mubasher. (*Id.* ¶¶ 3, 6.) Yusupov's English was limited at the time of the accident, so Plaintiff translated for Yusupov as he discussed the accident with Mubasher. (*Id.* ¶¶ 4, 5.) Mubasher then called the police. (*Id.* ¶ 7.) Defendants NYPD Officers Nicole Atkinson and Kurt Anderson responded to the scene of the car accident.[4] (*Id.* ¶ 8.)

Defendants Atkinson and Anderson asked Plaintiff, Yusupov, and Mubasher what had occurred and asked all three of them to provide their driver's licenses, as well as documentation related to Mubasher's and Yusupov's cars. (*Id.* ¶ 9.) Plaintiff asserts that she asked Officer Atkinson why she needed to provide her driver's license if she was not the driver of the car, and that Officer Atkinson responded that she needed all of the passenger information to put in the police report. (Plaintiff's Counterstatement 56.1 ("Pl.'s 56.1"), Dkt. 40, ¶ 9a; *see also* Deposition of Elina Turyants ("Pl.'s Dep."), Dkt. 37-1, at 42:6–18.) The parties dispute who provided the requested documents to Defendants; Defendants assert that, while Yusupov handed Defendant

---

[2] Unless otherwise noted, a standalone citation to a party's 56.1 Statement denotes that this Court has deemed the underlying factual allegation undisputed. Any citation to a party's 56.1 Statement incorporates by reference the documents cited therein. Where relevant, however, the Court may cite directly to the underlying document.

[3] Yusupov was Plaintiff's boyfriend at the time and is now her husband. (Defs.' 56.1, Dkt. 34, ¶ 1.)

[4] The parties dispute how long it took Defendants Atkinson and Anderson to respond to the scene of the accident. (Defendants' Reply 56.1 ("Defs.' 56.1 Reply"), Dkt. 41, at 2 (disputing Plaintiff's assertion that Defendants took 30–40 minutes to arrive at the scene).)

Atkinson a fraudulent vehicle registration document, it was Plaintiff who handed Atkinson a fraudulent insurance document. (Defs.' 56.1, Dkt. 34, ¶¶ 15–16.) However, Plaintiff asserts that, while she confirmed with Yusupov what documents Defendants were asking for, Yusupov gave all of the requested documents to the officers and "took responsibility for the forged documents that were handed" to them. (Pl.'s 56.1, Dkt. 40, ¶¶ 15a, 16a; *see also* Pl.'s Dep., Dkt. 35-1, at 43:23–25 ("[Yusupov] got the documents from the car and just asked me if this is what they need . . . ."); Deposition of Michael Yusupov ("Yusupov Dep."), Dkt. 37-2, at 23:25–24:3 ("But I asked [Plaintiff] if those are the documents that the policemen [are] asking for.").)

The registration and insurance provided to Defendants appeared to be fake. (Defs.' 56.1, Dkt. 34, ¶¶ 14, 17; Deposition of Nicole Atkinson ("Atkinson Dep."), Dkt. 35-3, at 42:8–14 (noting that she knew the registration was fake because "it was just a photocopy of a piece of paper"), 75:25 (noting that the insurance card was "fake"); Deposition of Kurt Anderson ("Anderson Dep."), Dkt. 35-4 at 43:11–15 (noting that "there was [sic] two fraudulent documents that were provided during the accident investigation").) The registration was a Florida Dealership Registration for "Diamond Motors Association LLC," located at 4873 Palm Coast PKWY, STE 4, Palm Coast, FL 32137 (Defs.' 56.1, Dkt. 34, ¶ 21), and the insurance was a Florida Commercial Auto Insurance Identification Card for a business called Diamond Motors Association, LLC, located at 101 Hibiscus Avenue., Bunnell, FL 32110 (*id.* ¶ 22). Furthermore, the license plate on Yusupov's car was a dealer plate, a type of license plate that is not issued to individuals. (*Id.* ¶ 20.) Once Defendants had collected the requested documents, they went to their police vehicle to run a computer check. (*Id.* ¶¶ 10, 11.) The computer check revealed that the Florida license plate on Yusupov's car had been reported stolen to the NYPD on December 24, 2016. (*Id.* ¶¶ 18, 19.)

Based on these observations and information, Defendants arrested Plaintiff and Yusupov.[5] (*Id.* ¶¶ 13–15; *see also* Anderson Dep., Dkt. 35-4 at 43:11–15 ("They were placed under arrest for the license plate on the vehicle that was reported stolen, and there was [sic] two fraudulent documents that were provided during the accident investigation."); Atkinson Dep., Dkt. 35-3, at 50:8–10 (noting that she arrested Plaintiff and Yusupov based on the documents they presented as well as the stolen plate).) Plaintiff was charged with (1) possession of a forged instrument in the first degree, pursuant to N.Y. Penal Law § 170.30; (2) possession of a forged instrument in the second degree, pursuant to N.Y. Penal Law § 170.25; and (3) criminal possession of stolen property in the fifth degree, pursuant to N.Y. Penal Law § 165.40. (Defs.' 56.1, Dkt. 34, ¶ 26; *see also* Arrest Report, Dkt. 35-8.) After Plaintiff and Yusupov were arrested, they were transported back to the 112th Precinct. (Defs.' 56.1, Dkt. 34, ¶ 28.) Plaintiff was arraigned on January 30, 2017. (*Id.* ¶ 32.) On May 5, 2017, Plaintiff accepted an adjournment in contemplation of dismissal ("ACD"), which terminated the criminal proceeding against her.[6] (*Id.* ¶ 39; *see also* Certificate of Disposition, Dkt. 35-12.)

---

[5] Though Plaintiff does not dispute this specific statement of fact (*see* Pl.'s 56.1, Dkt. 40, ¶ 12a), she later states that "[Officer] Anderson [was] not the arresting officer. [Officer] Anderson signed a supporting deposition to Mr. Yusupov['s] statement that 'I paid someone to get that plate'" (*id.* ¶ 38a).

[6] The Court notes that two criminal complaints were filed in Plaintiff's criminal proceeding before the case was terminated in May 2017. (Defs.' 56.1, Dkt. 34, ¶¶ 31, 33.) The parties agree that the only change between the two complaints was that the second complaint did not contain a paragraph reporting a statement from Mubasher, the Uber driver. (Pl.'s 56.1, Dkt. 40, ¶ 35a.) Plaintiff appears to argue that, by removing this paragraph, Defendant Atkinson was trying to obscure whether Plaintiff was the driver or merely a passenger in the vehicle, which Plaintiff argues is relevant to whether Defendants had probable cause to arrest her. (*See id*; Plaintiff's Memorandum in Opposition, Dkt. 38, at 6–8 (noting several times that Plaintiff was neither the driver nor the owner of Yusupov's car).) However, as discussed *infra*, even assuming that Plaintiff was only the passenger, Defendants still had probable cause, or, at a minimum, arguable probable cause, to arrest Plaintiff for possession of fraudulent registration and vehicle insurance documents.

## B. Procedural History

Plaintiff commenced this action on February 7, 2018. (Complaint, Dkt. 1.) After discovery, Defendants sought leave to file a motion for summary judgment. (Defendants' pre-motion conference letter, Dkt. 28.) Leave was granted on February 20, 2019. Defendants' motion was fully briefed on June 21, 2019. (*See* Dkts. 33–42.)

## LEGAL STANDARD

Summary judgment is appropriate where the submissions of the parties, taken together, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (noting that the summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The initial burden of "establishing the absence of any genuine issue of material fact" rests with the moving party. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). Once this burden is met, however, the burden shifts to the non-moving party to put forward some evidence establishing the existence of a question of fact that must be resolved at trial. *Spinelli v. City of New York*, 579 F.3d 160, 166–67 (2d Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A mere "scintilla of evidence" in support of the non-moving party is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (internal quotation marks and citation omitted; alteration in original). In other words, "[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*,

298 F.3d 156, 160 (2d Cir. 2002) (internal quotation marks and citation omitted).

In determining whether a genuine issue of fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). The court also construes any disputed facts in the light most favorable to the non-moving party. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157–59 (1970). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48.

## DISCUSSION

I. **False Arrest**

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal citations omitted); *see also Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) (citing *Weyant*, 101 F.3d at 852) (same). To prevail on a claim of false arrest or unlawful imprisonment, a plaintiff must prove that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003) (internal quotation marks and citation omitted). "'[T]he existence of probable cause' for an arrest 'is an absolute defense to a false arrest claim.'" *Dancy v. McGinley*, 843 F.3d 93, 107 (2d Cir. 2016) (brackets in original) (quoting *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006)).

### A. Defendants Had Probable Cause to Arrest Plaintiff

In this case, the only potentially disputed issue with respect to Plaintiff's false arrest claim is whether there was probable cause for her arrest.

> Although the existence of probable cause must be determined with reference to the facts of each case, in general "[p]robable cause to arrest exists when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested."

*Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (brackets in original) (quoting *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007)). The existence of probable cause "must be determined by reference to the totality of the circumstances." *Id.*

Defendants argue that they had probable cause to arrest Plaintiff because she constructively possessed the fraudulent documents and stolen license plate/car that her arrest was based on. (Defendants' Memorandum in Support ("Defs.' Br."), Dkt. 36, at 8–9.) Under New York law, a person "constructively possesses tangible property when he [or she] exercises 'dominion and control' over the property with a sufficient level of control over the area in which the contraband is found." *Davis v. City of New York*, No. 04-CV-3299 (JFB) (RLM), 2007 WL 755190, at *5 (E.D.N.Y. Feb. 15, 2007) (internal quotation marks and citation omitted). A person's "'mere presence' in a location containing contraband is insufficient to establish constructive possession; rather, the defendant's 'presence [must be] under a particular set of circumstances from which a reasonable jury could conclude that the defendant constructively possessed contraband.'" *Roberts v. City of New York*, No. 16-CV-5409 (BMC), 2017 WL 4357291, at *5 (E.D.N.Y. Sept. 29, 2017) (brackets in original) (quoting *United States v. Facen*, 812 F.3d 280, 287 (2d Cir. 2016)). "The standard for determining constructive possession is fact-specific, and as the Second Circuit has stated, 'it is not necessary for a defendant to touch or exercise exclusive control over contraband

to possess it,' because '[w]hat is required is sufficient indicia of dominion and control.'" *Id.* at *8 (brackets in original) (quoting *United States v. Rios*, 856 F.2d 493, 496 (2d Cir. 1988)).

Here, Defendants had sufficient information to support a reasonable belief that Plaintiff constructively possessed the fraudulent vehicle-related documents. Viewed in the light most favorable to Plaintiff: (1) she was a passenger in a car bearing a license plate that had been reported stolen and for which fraudulent insurance documentation was produced (Defs.' 56.1, Dkt. 34, ¶¶ 18–19; Pl.'s 56.1, Dkt. 40, ¶ 57); (2) the car contained only Yusupov, who was driving, and Plaintiff, who was seated in the front passenger seat, in front of the glove compartment containing the fraudulent documents; and (3) Plaintiff and Yusupov conferred about the fraudulent documents before Yusupov gave them to Defendants (Pl.'s Dep., Dkt. 35-1, at 43:23–25; Yusupov Dep., Dkt. 37-2, at 23:25–24:3; Pl.'s 56.1, Dkt. 40, ¶¶ 15a, 16a). Even if Plaintiff was not driving the car and did not hand the documents to the police, her involvement in these events was sufficient to support Defendants' belief that Plaintiff constructively possessed the documents at issue. *See Ikezi v. City of New York*, No. 14-CV-5905 (MKB), 2017 WL 1233841, at *12 n.6 (E.D.N.Y. Mar. 31, 2017) ("Plaintiffs argue that the officers lacked probable cause to detain [one of the plaintiffs] because he was not driving the vehicle. Plaintiffs' argument lacks merit because the doctrine of constructive possession imputes possession of the license plate to [the non-driving plaintiff] and the officers lacked knowledge as to who may have forged the license plate.") (internal record citations omitted); *see also Edwards v. Castro*, No. 16-CV-2383 (KMK), 2018 WL 4680996, at *9 (S.D.N.Y. Sept. 28, 2018) (finding probable cause existed to arrest the plaintiff even though "the backpack was between [the non-party's] legs, not Plaintiff's, Defendants observed only [the non-party], not Plaintiff, touching the bag, and the backpack contained only men's clothing [when

the plaintiff was a woman]," because "the backpack was within [the p]laintiff's reach as the driver of the vehicle") (internal record citations omitted).

In particular, Defendants' observation that Plaintiff was conferring with Yusupov before he handed the documents to the officers supported their inferences that Plaintiff was involved with the documents and knew that they were fraudulent, and that Plaintiff was not merely an unwitting stranger.[7] Likewise, the fact that the documents were taken from the glove compartment on the passenger side of the car, where Plaintiff asserts she was sitting (*see* Pl.'s Dep., Dkt. 35-1, 44:21–23 (noting that the requested documents were "closer to the passenger side"); *see also* Yusupov Dep., Dkt. 35-5, at 23:20–21), further suggests Plaintiff's awareness of and/or control over the fraudulent documents. *See Edwards*, 2018 WL 4680996, at *9 (finding that probable cause existed to arrest driver of a car where contraband was within her reach, even when she never touched the contraband). "[A] car passenger . . . will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing." *Maryland v. Pringle*, 540 U.S. 366, 373 (2003) (quoting *Wyoming v. Houghton*, 526 U.S. 295, 304–05 (1999)); *United States v. Patrick*, 899 F.2d 169, 171–72 (2d Cir. 1990) (finding that a criminal defendant constructively possessed cocaine because the fact that "he entered the Immigration Office with [the person physically possessing cocaine] at a time when no others were present and that they both had accidentally crossed into Canada . . . provided an adequate basis for the officials to reasonably believe that the criminal defendant was not just a mere innocent traveling companion but was traveling *and* acting in concert with [the other person] in transporting the cocaine") (emphasis in original). Additionally, Plaintiff's role in translating for Yusupov during the

---

[7] Though discovery has revealed that Yusupov and Plaintiff, now married, were involved in a romantic relationship at the time of the arrest, the officers did not know of the relationship then.

interactions with Defendants reinforced the inference that Plaintiff was involved in the possession of the fraudulent documents. Indeed, Yusupov himself concluded that Defendants likely "arrested [Plaintiff] because they thought that she [was] my partner. And they got to that conclusion because she was translating between me and them." (Yusupov Dep., Dkt. 35-5, 22:14–17; *see also id.* at 63:10–64:17 (noting that Yusupov believed the police thought Plaintiff was "cooperating with [him]" and that "she [knew] more [than] what I said to [the officers]").)

The fact that Yusupov tried to take responsibility for the forged documents (*see* Pl.'s 56.1, Dkt. 40, ¶ 15a) is insufficient to counter Defendants' reasonable belief that Plaintiff also possessed the documents. "First, constructive possession is not a single-possessor theory, and multiple individuals may have constructive possession of contraband." *Roberts*, 2017 WL 4357291, at *6. "Second, and more importantly, 'an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause.' This is true even where an 'innocent explanation may be consistent with the facts alleged.'" *Id.* (quoting *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006)). Therefore, Defendants were not required to accept Yusupov's assertion that he was solely responsible for the stolen documents. *See id.*; *Pickering v. DeFrance*, No. 14-CV-1207 (VLB), 2016 WL 5799293, at *10 (D. Conn. Sept. 30, 2016) (noting that probable cause existed as to a "driver of car containing contraband professed to belong to another, because circumstances led the police officer to believe the driver was not an 'unwitting stranger' to the contraband owner") (quoting *United States v. Polanco*, 506 F. App'x 55, 57 (2d Cir. 2012) (summary order)); *Waddlington v. City of New York*, 971 F. Supp. 2d 286, 294 (E.D.N.Y. 2013) ("Even assuming that [another individual] informed [the searching officer] that the illegal items belonged to him . . . such facts in no way impact whether [the p]laintiff was in close proximity to [the contraband] at the time [the contraband] was found.") (internal quotation marks and citations

omitted); *see also United States v. Clark*, 638 F.3d 89, 95 (2d Cir. 2011) ("Control, after all, can be manifested in various ways—*e.g.*, ownership, occupancy, access, authority to exclude others— and exercised to varying degrees."); *Coons v. Casabella*, 284 F.3d 437, 441 (2d Cir. 2002) ("[P]olice officers are not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.") (internal quotation marks and citations omitted).

The Court therefore finds that, even construing the facts in the light most favorable to Plaintiff, Defendants nonetheless had probable cause to arrest her for possession of the fraudulent vehicle-related documents. *See Thomas v. City of New York*, No. 11-CV-2219 (LAP) (GWG), 2013 WL 1325186, at *6 (S.D.N.Y. Apr. 2, 2013), *aff'd*, 562 F. App'x 58 (2d Cir. 2014) (summary order) (granting summary judgment for Defendants where the disputed facts, interpreted in the light most favorable to Plaintiff, nonetheless supported finding that probable cause existed to support the plaintiff's arrest). Accordingly, Plaintiff's false arrest claim is dismissed.

### B. Defendants Are, at a Minimum, Entitled to Qualified Immunity as to the False Arrest Claim

Even assuming, *arguendo*, that Defendants did not have probable cause to arrest Plaintiff, the Court finds that Defendants, at the very least, had arguable probable cause and are therefore shielded from liability by qualified immunity. A defendant is entitled to qualified immunity if "(1) the defendant's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for the defendant to believe that his actions were lawful at the time of the challenged act." *Tooly v. Schwaller*, 919 F.3d 165, 172 (2d Cir. 2019) (internal quotation marks, brackets, and citation omitted). "In the false arrest context, '[a]n arresting officer is entitled to qualified immunity . . . even when probable cause to arrest does not exist, if he can establish that there was arguable probable cause to arrest.'" *Thomas*, 2013 WL 1325186, at *7 (quoting *Ackerson v. City of White*

*Plains*, 702 F.3d 15, 19 (2d Cir. 2012)). "Arguable probable cause" exists where state officials "of reasonable competence could disagree on the legality of the action at issue in its particular factual context." *Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007) (internal quotation marks and citation omitted). Here, the Court finds that reasonable officers could disagree as to whether there was probable cause to arrest Plaintiff given that, by translating and conferring with Yusupov about the fraudulent documents, she appeared to constructively possess the documents and was not just in "mere" proximity to the contraband. *See Roberts*, 2017 WL 4357291, at *5 (noting that a defendant's "'mere presence' in a location containing contraband is insufficient to establish constructive possession; rather, the defendant's 'presence [must be] under a particular set of circumstances from which a reasonable jury could conclude that the defendant constructively possessed contraband.'") (quoting *Facen*, 812 F.3d at 287). Accordingly, even assuming that no probable cause existed, Plaintiff's false arrest claim still fails.

## II. Malicious Prosecution

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law." *Manganiello*, 612 F.3d at 160–61 (internal citations omitted). To state a malicious prosecution claim under New York law, "a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Id.* at 161 (internal quotation marks and citation omitted). "A claim for malicious prosecution under section 1983 requires the additional element of '(5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights.'" *Perez v. Duran*, 962 F. Supp. 2d 533, 540 (S.D.N.Y.

2013) (quoting *Rohman v. N.Y.C. Transit Auth. (NYCTA)*, 215 F.3d 208, 215 (2d Cir. 2000)).

Here, Defendants argue that Plaintiff's malicious prosecution claim fails because Plaintiff's criminal proceeding was not terminated in her favor. (Defs.' Br., Dkt. 36, at 6–7.) The Court agrees. "[T]he 'favorable termination' element of a federal malicious prosecution claim requires 'affirmative indications of innocence' . . . ." *Blount v. City of New York*, No. 15-CV-5599 (PKC) (JO), 2019 WL 1050994, at *2 (E.D.N.Y. Mar. 5, 2019) (quoting *Lanning v. City of Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018)). "The answer to whether the termination is indicative of innocence depends on the nature and circumstances of the termination; the dispositive inquiry is whether the failure to proceed impl[ies] a lack of reasonable grounds for the prosecution." *Murphy v. Lynn*, 118 F.3d 938, 948 (2d Cir. 1997) (brackets in original) (internal quotation marks and citation omitted). "[I]t is settled law in the Second Circuit that an ACD under N.Y. Crim. Proc. Law § 170.55 is not a favorable outcome for purposes of malicious prosecution claims." *Bynum v. Doe*, No. 16-CV-6332 (KAM) (ST), 2019 WL 1259568, at *4 (E.D.N.Y. Mar. 19, 2019) (citing *Green v. Mattingly*, 585 F.3d 97, 103 (2d Cir. 2009); *Singleton v. City of New York*, 632 F.2d 185, 193 (2d Cir. 1980)). Plaintiff's criminal proceeding terminated when she accepted an ACD on May 5, 2017. (Defs.' 56.1, Dkt. 40, ¶ 39.) Accordingly, Plaintiff fails to state a claim of malicious prosecution, and this claim is dismissed.

### III. Failure to Intervene

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).

> An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know:

> (1) that excessive force is being used; (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a law enforcement official.

*Anderson*, 17 F.3d at 557 (citations omitted). To establish a claim for failure to intervene, a plaintiff must show that (1) the officer's failure "permitted fellow officers to violate [a plaintiff's] clearly established statutory or constitutional rights," and (2) it was "objectively unreasonable for [the officer] to believe that his fellow officers' conduct did not violate those rights." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997) (internal quotation marks and citation omitted). Additionally, Plaintiff must show that the officer had "a realistic opportunity to intervene to prevent the harm from occurring" but failed to do so. *Cerbelli v. City of New York*, No. 99-CV-6846 (ARR) (RML), 2008 WL 4449634, at *11 (E.D.N.Y. Oct. 1, 2008) (internal quotation marks and citation omitted).

"Failure to intervene claims are contingent upon the disposition of the primary claims underlying the failure to intervene claim." *Usavage v. Port Auth. of N.Y. and N.J.*, 932 F. Supp. 2d 575, 599 (S.D.N.Y. 2013) (internal quotation marks and citation omitted). In general, "if the Court determines that the officer's conduct did not violate a constitutional right[,] the analysis ends." *Williams v. City of New York*, No. 14-CV-7158 (JPO), 2016 WL 3194369, at *6 (S.D.N.Y. June 7, 2016) (internal quotation marks, alterations, and citations omitted). Here, for the reasons stated *supra*, the Court has already dismissed Plaintiff's false arrest and malicious prosecution claims. "[T]he absence of any underlying constitutional violations requires dismissal of [P]laintiff's failure to intervene claims." *Sharpe v. City of New York*, No. 11-CV-5494 (BMC), 2013 WL 2356063, at *9 (E.D.N.Y. May 29, 2013), *aff'd*, 560 F. App'x 78 (2d Cir. 2014) (summary order); *see also Wieder v. City of New York*, 569 F. App'x 28, 30 (2d Cir. 2014) (summary order) ("Because the underlying constitutional claims were properly dismissed, we also

affirm the district court's dismissal of plaintiff's failure to intervene claim."). Accordingly, Plaintiff's failure to intervene claim is dismissed.

### A. State Law Claims

Having disposed of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's claims arising under New York state law. *See* 28 U.S.C. § 1367(c)(3). Where "all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (internal quotation marks and citation omitted); *see also Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."). Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and dismisses them without prejudice, pursuant to 28 U.S.C. § 1367(c)(3).

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is granted as to Plaintiff's federal claims against all Defendants, which are dismissed with prejudice, as well as Plaintiff's state law claims, which are dismissed without prejudice to be refiled in state court. The Clerk of Court is respectfully requested to enter judgment and terminate this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: February 18, 2020
      Brooklyn, New York